UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

---

DONNAMARIA BROWN,

       Plaintiff,

   v.           DECISION AND ORDER
                 12-CV–251

COUNTY OF ERIE and ERIE COUNTY
SHERIFF'S OFFICE (HOLDING CENTER)

       Defendants.

---

## **INTRODUCTION**

Plaintiff Donnamaria Brown ("Plaintiff" or "Brown"), a licensed practical nurse, commenced the instant employment discrimination and civil rights action against her employer, Erie County (the "County" or "Defendant"). She also names Erie County Sheriff's Office (Holding Center) as a defendant in the action. Plaintiff claims that she suffered discrimination, retaliation and harassment in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. §2000e, *et seq*. ("Title VII"). She also alleges race and national origin discrimination and retaliation in violation of 42 U.S.C. §1981 ("Section 1981").

Defendants have moved to dismiss Plaintiff's complaint in its entirety pursuant to Federal Rules of Civil Procedure 8(a) and 12(b)(6). For the reasons that follow, Defendants' motion is granted in part and denied in part.

## ALLEGED FACTS

Brown is an African American female and licensed practice nurse ("LPN").[1] She was hired by Erie County in 2001 to work for the Sheriff's Office as an LPN at the Erie County Holding Center. Plaintiff was terminated by Erie County on July 25, 2008. She claims that she was discriminated against, on account of her race, in the months preceding her termination.

Specifically, Plaintiff alleges that on February 21, 2008, Undersheriff Doyle and Cecilia Kohlmeier, Plaintiff's supervisor, berated Plaintiff and Colleen Dolac, Plaintiff's co-worker. Ms. Dolac is Caucasian. Plaintiff claims that Undersheriff Doyle and Ms. Kohlmeier falsely accused them of fighting and engaging in unprofessional behavior. Plaintiff further alleges that their work was criticized and that insults were shouted at them. When Plaintiff attempted to defend herself, Mrs. Kohlmeier accused her of trying to pull the "white card" or "the card you people use", (i.e. the race card). Plaintiff also states that Mrs. Kohlmeier was instructed by Undersheriff Doyle to "document everything [Plaintiff and her co-worker] do wrong."

On February 22, 2008, the day following this incident, Plaintiff sent a letter to Erie County Sheriff Timothy Howard complaining of discrimination and

---

[1] The facts set forth herein reflect the allegations in Plaintiff's complaint. All well-pleaded allegations are accepted as true for purposes of this motion to dismiss, but do not constitute the findings of the Court. *See Chambers v. Time Warner, Inc.*, 282 F.3d 147, 152 (2d Cir. 2002).

harassment. Plaintiff expressed, in the letter, that she had not been permitted to defend herself with respect to Mrs. Kohlmeier and Undersheriff Doyle's allegations, and that she was afraid to come to work. Ms. Dolac sent a similar complaining letter to Sheriff Howard. Plaintiff states that after sending the letters, she and Ms. Dolac "were the only employees to have time on an attendance sheet not approved."

Chief Michael Pliszka of the Erie County Sheriff's Office Professional Standards Division conducted an internal investigation in response to Plaintiff's complaint to Sheriff Howard. On June 10, 2008, Plaintiff was informed that the investigation had been completed and that the Professional Standards Division determined that there had been a violation of the Erie County Sheriff's Office policy prohibiting harassment, discrimination and retaliation. Plaintiff provides no further information regarding what action, if any, was taken in response to this finding.

Plaintiff then alleges that on June 18, 2008, shortly after she received the response to her complaint from the Professional Standards Division, she was "questioned about her activities" at work on April 8, 2008. Plaintiff states that on April 8, 2008 she was assigned to the position of "sick call nurse" and that she worked her shift without incident. Plaintiff responded to the "questioning" by stating that she did not engage in any misconduct or harassment, and that she did not witness any misconduct or harassment on the part of her co-workers.

3

Plaintiff does not provide information as to who "questioned" her.

On July 8, 2008, Plaintiff received a memo from Superintendent Donald Livingston. The memo alleged that on April 8, 2008, Plaintiff harassed a co-worker by adding rubbing alcohol to that co-worker's jar of Vaseline. The memo requested Plaintiff's attendance at a disciplinary proceeding to be held on July 18, 2008. During the hearing Plaintiff denied any involvement in the April 8, 2008 incident. Her statements were not believed, and she was terminated on July 25, 2008 as a result of the incident.

## **Discussion**

When ruling on a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6), the Court must "accept all of the plaintiff's factual allegations in the complaint as true and draw inferences from those allegations in the light most favorable to the plaintiff." *Starr v. Georgeson S'holder, Inc.*, 412 F.3d 103, 109 (2d Cir. 2005). A complaint should be dismissed only if it fails to contain enough allegations of fact to state a claim for relief that is "plausible on its face." *Bell Atl. Corp. V. Twombly*, 550 U.S. 544 (2007); see also *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). In considering a motion to dismiss, "the issue is not whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claims." *Todd v. Exxon Corp.*, 275 F.3d 191, 198 (2d Cir. 2011).

Here, Plaintiff's causes of action include retaliation, discrimination and

4

harassment in violation of Title VII and discrimination and retaliation in violation of Section 1981. Plaintiff claims that she was denied time off, falsely accused of harassment in connection with the April 8, 2008 incident, and later terminated, all in retaliation for her February 22, 2008 complaint to Sheriff Howard. She also claims that she was discriminated against based upon her race and subjected to a hostile work environment.

    1.    *Defendant Erie County Sheriff's Office (Holding Center)*

Plaintiff names both Erie County and the Erie County Sheriff's Office (Holding Center) as defendants in the instant matter. Under New York Law, a county is a municipal corporation capable of bringing suit and being sued. *See* New York General Municipal Law §2. A police department is a municipal arm of the municipal corporation. *Baker v. Willett*, 42 F. Supp. 2d 192 (NDNY 1999). Because a police department does not exist separate and apart from the municipality, nor is it considered its own legal entity, it cannot sue or be sued. *Id*.; *Loria v. The Town of Irondequoit*, 775 F. Supp. 599 (WDNY 1990) (defendant police department, which is merely an administrative arm of a municipal corporation, does not have a legal identity separate and apart from the town).

Defendants argue correctly that the Erie County Sheriff's Office is an improper party in this matter. Since the Sheriff's Office is an administrative arm of Erie County and Erie County is the correct defendant here, the claims against the Erie County Sheriff's Office are dismissed as redundant. The case will

proceed with respect to defendant Erie County only.

2. *Retaliation under Title VII*

Title VII of the Civil Rights Act of 1964 forbids employment discrimination against "any individual" based on that individual's "race, color, religion, sex, or national origin." 42 U.S.C. §2000e-2(a). The anti-retaliation provision of Title VII forbids an employer from "discriminating against" an employee because that individual "opposed any practice" made unlawful by Title VII or "made a charge, testified, assisted or participated in" a Title VII proceeding or investigation. *Id*. at §2000e-3(a).

The burden shifting analysis set forth in *McDonnell Douglas Corp. v. Green*, 411 US 792, 802 (1973), and used in claims of employment discrimination, is also applied to retaliation claims brought pursuant to Title VII. *Terry v. Ashcroft*, 336 F.3d 128, 140 (2d Cir. 2003). In order to establish a *prima facie* case of retaliation, a plaintiff must demonstrate that: (1) she participated in an activity protected by Title VII; (2) the employer was aware of her participation in the protected activity; (3) the employer subjected her to a materially adverse employment action; and (4) a causal connection exists between the protected activity and the adverse employment action. *Kaytor v. Electric Boat Corp*., 609 F.3d 537, 552 (2d Cir. 2010). At the pleading stage, plaintiff "need not establish a *prima facie* case of discrimination, but must nonetheless allege evidence stating a plausible claim of retaliation." *Stewart v. The City of New York*, 2012 U.S. Dist.

LEXIS 96998 (SDNY 2012).

Protected activity "refers to action taken to protest or oppose statutorily prohibited discrimination." *Cruz v. Coach Stores, Inc.,* 202 F.3d 560, 566 (2d Cir. 2000). This includes activities such as "making complaints to management, writing critical letters to customers, protesting against discrimination by industry or by society in general, and expressing support of co-workers who have filed formal charges." *Id*.; *accord Sumner v. United States Postal Serv.*, 899 F.2d 203, 209 (2d. Cir. 1990). Importantly, an employee does not have to demonstrate that her charge or complaint would ultimately be successful or actionable in order to constitute protected activity. *See Treglia v. Town of Manlius*, 313 F.3d 713, 719 (2d Cir. 2002) ("a plaintiff may prevail on a claim for retaliation even when the underlying conduct complained of was not in fact unlawful so long as he can establish that he possessed a good faith, reasonable belief that the underlying challenged actions of the employer violated the law.")

As to the first element of her *prima facie* case, it is clear that Plaintiff engaged in a protected activity when she wrote a letter to Sheriff Howard specifically complaining of discrimination and harassment. *See Delville v. Firmenich Inc.*, 2013 U.S. Dist. LEXIS 17461 (SDNY 2013) (email complaining of age discrimination was enough to constitute an "opposition" to any discrimination); *Kotcher v. Rosa and Sullivan Appliance Center, Inc.*, 957 F.2d 59 (2d Cir. 1991) (internal complaint to management regarding harassment by a co-

worker is protected activity within the policies of Title VII).

With respect to the second element, general knowledge of protected activity is sufficient to establish a *prima facie* case. *Hill v. Rayboy-Brauestein*, 467 F. Supp. 2d 336 (SDNY 2006); *Gordon v. N.Y. City Bd. Of Educ.*, 232 F.3d 111 (2d Cir. 2000) ("Neither this nor any other circuit has ever held that, to satisfy the knowledge requirement, anything more is necessary than general corporate knowledge that the Defendant engaged in protected activity."); *Suarez v. City of New York*, 2012 U.S. Dist. LEXIS 144918 (SDNY 2012) (a plaintiff needs to show that individual decision-makers within the organization knew about the protected activity in order to establish a *prima facie* case). Here, Plaintiff complained to the Sheriff of Erie County and her complaints were investigated by the Erie County Sheriff's Office Professional Standards Division. These allegations are enough to satisfy the general knowledge requirement of a *prima facie* case.

With respect to the third element, Plaintiff must establish that Defendant subjected her to adverse employment actions. A plaintiff sustains an adverse employment action if he or she suffers a "materially adverse change" in their terms or conditions of employment. *Galabya v. New York City Bd. Of Educ.*, 202 F.3d 636, 640 (2d Cir. 2000). Typical examples of adverse employment actions include "termination of employment, a demotion evidenced by a decrease in wage or salary, a less distinguished title, a material loss of benefits, [or] significantly diminished material responsibilities." *Miller v. Praxair, Inc.*, 408 Fed.

Appx. 408 (2d Cir. 2010).

Here, Plaintiff points to the denial of her attendance time sheet, the disciplinary charges and proceeding regarding the April 8, 2008 incident and her termination of employment as examples of adverse employment actions. While Plaintiff has not pled enough facts for the Court to determine whether the denial of her "attendance time sheet" constituted an adverse employment action, the disciplinary charges and her resulting termination clearly qualify as adverse employment actions. *See Burlington Indus., Inc. v. Ellerth*, 524 U.S. 742, 761 (1998) (termination of employment is certainly an adverse employment action); *Temple v. City of New York*, 2010 US Dist. LEXIS 99820 (EDNY 2010) (disciplinary charges and ultimate termination of employment constituted adverse employment action); *Hughes v. Anderson*, 2012 U.S. Dist. LEXIS 104584 (EDNY 2012) (initiation of disciplinary proceedings leading to employee's termination constituted adverse employment action).

With respect to the final element, proof of causation can be shown either through direct evidence of retaliatory animus or indirectly by showing that the protected activity was followed closely by discriminatory treatment or through other circumstantial evidence. *Gordon v. N.Y. City Bd. Of Educ.*, 232 F.3d 111 (2d Cir. 2000). When assessing indirect causal evidence, the Second Circuit has "not drawn a bright line to define the outer limits beyond which a temporal relationship is too attenuated to establish a causal relationship between the

9

exercise of a federal constitutional right and an allegedly retaliatory action." *Gorman-Bakos v. Cornell Coop. Extension of Schenectady Cnty.*, 252 F.3d 545 (2d. Cir. 2001). "This has allowed our Court to exercise its judgment about the permissible inferences that can be drawn from temporal proximity in the context of particular cases." *Espinal v. Goord*, 558 F.3d 119, 129 (2d. Cir. 2009).

Plaintiff engaged in protected activity on February 22, 2008. She was served with disciplinary charges on July 8, 2008, was subject to a disciplinary proceeding on July 18, 2008 and terminated on July 25, 2008, approximately five months after complaining about discrimination and harassment. The Second Circuit has held that "for purposes of a *prima facie* case, the outer limits beyond which a temporal relationship is too attenuated to establish causation...five months is not too long to find the causal relationship." *Gorzynski v. Jetblue Airways Corp.*, 596 F.3d 93 (2d. Cir. 2010); *accord Gorman-Bakos v. Cornell Coop. Extension of Schenectady County*, 252 F.3d 545, 554 (2d. Cir. 2001). *See also Ibok v. Securities Industry Automation Corp.*, 360 Fed. Appx. 210 (2d. Cir. 2010) ("A temporal relationship between the protected activity and the adverse action–even when they are as much as five months apart–can establish a *prima facie* case of retaliation."); *Conklin v. County of Suffolk*, 859 F. Supp. 2d 415 (EDNY 2012) (finding that the sequence of events alleged, beginning with plaintiff's initial complaints and filing of formal complaint and ending with plaintiff's termination, occurred within a five and a half month period, and that this was

"such a limited time frame that a *prima facie* case [was] established); *Deshpande v. Medisys Health Network, Inc.*, 2008 U.S. Dist. LEXIS 37444 (EDNY 2008) (at the pleading stage of a Title VII retaliation claim, five months is temporally close enough to support an inference of causation and is sufficient to defeat a motion to dismiss).

Accordingly, the Court finds that Plaintiff has established a *prima facie* case of retaliation pursuant to Title VII.

2.  *Hostile Work Environment under Title VII*

In order to establish a hostile work environment claim, a plaintiff must show: "(1) that the workplace was permeated with discriminatory intimidation that was sufficiently severe or pervasive to alter the conditions of his or her work environment, and (2) that a specific basis exits for imputing the conduct that created the hostile work environment to the employer." *Mack v. Otis Elevator Co.*, 326 F.3d 116, 122 (2d. Cir. 2003). This standard has both objective and subjective elements. The misconduct must be "severe or pervasive enough to create an objectively hostile or abusive working environment" and the victim must "subjectively perceive that environment to be abusive." *Alfano v. Costello*, 294 F.3d 365, 374 (2d Cir. 2002).

Among the factors to be considered in evaluating a hostile work environment claim are "the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance;

11

and whether it unreasonably interferes with the employee's work performance." *Harris v. Forklift Sys.*, 510 U.S. 17, 23 (1993). Importantly, isolated incidents typically do not rise to the level of a hostile work environment unless they are so "severe and pervasive" as to change the terms and conditions of employment. *Demoret v. Zegarelli*, 451 F.3d 140, 149 (2d Cir. 2006). *See Boakye-Yiadom v. Laria*, 2012 U.S. Dist. LEXIS 165068 (EDNY 2012) (three isolated incidents is not severe or pervasive enough to alter the conditions of plaintiff's employment so as to create a hostile work environment).

In support of her hostile work environment claim, Plaintiff alleges a single instance where she was yelled at, called unprofessional, criticized, and told that she was playing "the card you people use". Indeed, Plaintiff's supervisor's comment regarding "the white card" or "the card you people use" was highly inappropriate. However, the conduct alleged, which includes only a single incident involving one racially offensive statement as well as some generally harsh criticisms and reprimands on the part of Plaintiff's supervisors, does not rise to the level of severity needed to establish a *prima facie* case of hostile work environment discrimination. *See Harris v. Forklift Sys., Inc.*, 510 US 17, 21 (1993) (the "mere utterance of an epithet which engenders offensive feelings in an employee does not sufficiently affect the conditions of employment to implicate Title VII"); *Quinn v. Green Tree Credit Corp.*, 159 F.3d 759, 765 (2d. Cir. 1998) ("isolated remarks" or "occasional episodes of harassment" will not establish a

claim under Title VII, "the incidents of harassment must occur in concert or with a regularity that can reasonably be termed pervasive"); *Schwapp v. Town of Avon*, 118 F.3d 106, 110 (2d. Cir. 1997) (for comments and slurs to constitute a hostile work environment, there must be "a steady barrage of opprobrious racial comments").

Moreover, Plaintiff alleges that both she and her co-worker Ms. Dolac, a Caucasian, were belittled, criticized and yelled at during the incident at issue. The fact that the majority of the conduct supporting Plaintiff's allegation of hostile work environment discrimination was also directed at a Caucasian employee indicates that Plaintiff's race was not a motivation for the behavior. Without factual allegations sufficient to establish that the harassment was because of Plaintiff's race, Plaintiff cannot maintain a claim of hostile work environment discrimination. *Rivera v. Rochester Genesee Regional Transportation Authority*, 720 F.3d 685 (2d Cir. 2012); *accord Brown v. Henderson*, 257 F.3d 246, 252 (2d Cir. 2001) ("it is axiomatic that mistreatment at work, whether through subjection to a hostile work environment or through [other means], is actionable under Title VII only when it occurs because of an employee's...protected characteristics")*. See also Das v. Consolidated School District of New Britain*, 369 Fed. Appx. 186 (2d. Cir. 2010) (upholding dismissal of hostile work environment claim because plaintiff "did not proffer evidence that all, or even most, of the alleged harassment was because of her ethnicity"); *Jeter v. New York City Department of Education*

13

*of the City of New York*, 2012 U.S. Dist. LEXIS 97811 (EDNY 2012) ("The flaw in Plaintiff's claim is that he does not offer any evidence from which a rational fact-finder could conclude that the conduct creating the hostile work environment occurred because of Plaintiff's race.")

Therefore, the Court grants Defendant's motion to dismiss with respect to Plaintiff's hostile work environment claim under Title VII.

3.  *Race Discrimination under Title VII*

In order to establish a *prima facie* case of discriminatory discharge under Title VII, a plaintiff must establish the following: (1) that she is a member of a protected class; (2) that she was qualified for the position she held; (3) that she suffered an adverse employment action; and (4) that the adverse employment action took place under circumstances giving rise to an inference of discrimination. *Ruiz v. County of Rockland*, 609 F.3d 486 (2d. Cir. 2010).

Plaintiff easily satisfies the first three elements of her *prima facie* claim of race discrimination. It is clear that Plaintiff, an African American who worked as an LPN at the Holding Center for seven years prior to her termination, is a member of a protected class and was qualified for the position she held. In addition, her termination constitutes an adverse employment action. *See Schiano v. Quality Payroll Sys., Inc.*, 445 F.3d 597, 609 (2d Cir. 2006) ("Examples of materially adverse changes include termination of employment, a demotion evidenced by a decrease in wage or salary, a less distinguished title, a

material loss of benefits, significantly diminished material responsibilities, or other indices unique to a particular situation.")

Plaintiff may satisfy the fourth element by showing direct evidence of discriminatory animus, such as "remarks made by decisionmakers that could be viewed as reflecting [such] animus." *Chertkova v. Conn. Gen. Life Ins. Co.*, 92 F.3d 81, 91 (2d Cir. 1996). Plaintiff points to Ms. Kohlmeier and Undersheriff Doyle's "discriminating and threatening statements" on February 21, 2008 as evidence of discriminatory animus. However, as explained above, the vast majority of Undersheriff Doyle's and Ms. Kohlmeier's conduct and speech was directed equally at both Plaintiff and her Caucasian co-worker, and therefore fails to show racial animus of any kind.

Moreover, while Ms. Kohlmeier's comment regarding Plaintiff playing "the card you people use" could be viewed as racially offensive, there are no allegations that Ms. Kohlmeier was involved in the filing of disciplinary charges or the decision to terminate Plaintiff's employment. Courts have routinely held that "stray remarks by non-decisionmakers are insufficient, without other evidence, to raise an inference of discrimination." *Adam v. Glen Cove School*, 2008 US Dist. LEXIS 13039 (EDNY 2008). *See also Beshty v. GM*, 327 F.Supp. 2d 208, 213 (WDNY 2004) (alleged remark made by someone who had no involvement in plaintiff's termination, months before termination occurred, did not support an inference of discrimination); *Hayes v. Cablevision Systems New York City Corp.*,

2012 U.S. Dist. LEXIS 45622 (EDNY 2012) ("Comments made by someone without a direct role in the termination decision are not probative of an intent to discriminate behind that decision.")

Absent direct evidence of a defendant's discriminatory intent, a plaintiff may establish circumstances giving rise to an inference of discrimination by showing that she was treated differently than similarly situated employees outside of her protected group. *Broich v. Inc. Vill. Of Southhampton*, 462 Fed. Appx. 39, 42 (2d. Cir. 2012). Plaintiff's complaint contains no allegations that she was treated differently than similarly situated employees. However, in Plaintiff's memorandum of law responding to Defendant's motion to dismiss, Plaintiff claims that she was treated differently than Ms. Cudzilo, "her equal at the Holding Center", because "Ms. Cudzilo was believed when she told both the Professional Standards committee and later investigators that it was Plaintiff who put rubbing alcohol in Ms. Ilogu's Vaseline jar."

Defendant contends that Plaintiff's argument regarding Ms. Cudzilo should be disregarded, since statements in counsel's memorandum of law cannot act as "a substitute supplementation of the deficient Complaint." *See Field et al. v. Tonawanda City School Dist.*, 604 F.Supp.2d 544, 560 (WDNY) (plaintiff's memorandum statements cannot constitute a viable pleading to avoid summary judgment). The Court concludes that even if it were to consider Plaintiff's allegations regarding Defendant's treatment of Ms. Cudzilo, Plaintiff still has not

raised an inference of discrimination.  Based upon the statements by counsel for both Plaintiff and Defendant, it appears that both Plaintiff and Ms. Cudzilo were terminated as a result of the April 8, 2008 incident involving the jar of Vaseline.  Thus, Plaintiff has failed to allege that she was treated differently than a similarly situated employee.  *See Ruiz*, 609 F.3d at 495 ("[b]ecause [plaintiff] has not identified a similarly-situated employee who faced equally serious allegations and whom [the employer] allowed to remain on the job, [plaintiff] has failed to raise an inference of discrimination"); *Casanova v. General Mills Restaurant, Inc.*, 1997 U.S. Dist. LEXIS 23246 (EDNY 1997) (plaintiff's claim of race discrimination dismissed since three white employees were fired for behavior "nearly identical" to plaintiff's).

Since Plaintiff has not alleged any conduct giving rise to an inference of discrimination, Defendant's motion to dismiss her race discrimination claim under Title VII is granted.

    4.    <u>*Discrimination and Retaliation under Section 1981*</u>

Section 1981 "outlaws discrimination with respect to the enjoyment of benefits, privileges, terms, and conditions of a contractual relationship, such a employment."  *See* 42 USC §1981; *Patterson v. Cnty. of Oneida, New York*, 375 F.3d 206, 224 (2d Cir. 2004).  The same elements that constitute a claim for employment discrimination or retaliation under Section 1981 constitute a claim under Title VII.  *White v. Eastman Kodak Co.*, 368 Fed. Appx. 200, 202 (2d Cir.

2010).

A municipal entity and its employees acting in their official capacity may be held liable under Section 1981. *Jett v. Dallas Indep. Sch. Dist*. 491 U.S. 701, 735-36. However, a municipality cannot be sued on the theory of *respondent superior*. *Id*. at 738. Instead, a plaintiff must show that the official action was taken pursuant to a policy of the municipality. *Hargett v. New York City Transit Authority*, 640 F. Supp. 2d 450 (SDNY 2009); *Jett,* 491 US at 733 ("the plaintiff is required to demonstrate that the challenged acts were performed pursuant to a municipal policy or custom").

Further, a plaintiff need not identify an express rule or policy, but instead may show that the discriminatory practices of municipal officials was so "persistent and widespread" as to constitute a "custom or usage with the force of law". *Sorlucco v. New York City Police Department*, 971 F.2d 864, 870 (2d. Cir. 1992). Proving that an employee with final decision-making authority engaged in racial discrimination will suffice to establish a municipal policy or custom. *Pembaur v. City of Cincinnati*, 475 US 469 (1986). The plaintiff bears the burden of establishing as a matter of law that the conduct of a given official represents official policy. *Everson v. NY City Transit Auth*., 2007 US Dist. LEXIS 11251 (EDNY 2007).

Plaintiff's complaint contains no allegations suggesting that Defendant's had a policy, practice or custom of tolerating racial harassment, discrimination or

18

retaliation. Plaintiff's complaint also fails to allege that an employee with final decision-making authority engaged in racial discrimination. The complaint does not allege that the individual or individuals responsible for Plaintiff's termination were final decision-makers with respect to setting employment policy. In fact, the complaint is wholly devoid of information as to who made the ultimate decision to terminate Plaintiff's employment.

Plaintiff's memorandum of law in opposition to Defendant's motion to dismiss states, for the first time, that Sheriff Howard and Undersheriff Doyle are "officials with final decision-making authority under the second avenue to impose liability [under Section 1981]" and that it was possible that "they were both intimately involved in the decision to terminate Plaintiff." *Id*. Even if the Court were to consider the averments in Plaintiff's counsel's memorandum of law, the Court finds them insufficient to rescue the pleading defects contained in Plaintiff's complaint. Plaintiff has made only conclusory statements with respect to "possible" involvement by a policymaker. Under the standards set forth in *Iqbal*, this is insufficient to state a Section 1981 claim against Defendant.

Thus, Defendant's motion to dismiss Plaintiff's claims of discrimination and retaliation under Section 1981 is granted.

## **Conclusion**

For the foregoing reasons, Defendant's motion to dismiss Plaintiff's claims under Section 1981 is granted. Defendant's motion to dismiss Plaintiff's claims of

race discrimination and hostile work environment under Title VII is also granted. Defendant's motion to dismiss Plaintiff's claim of retaliation under Title VII is denied. The case will be referred to a Magistrate Judge for further proceedings.

SO ORDERED.

*s/ Richard J. Arcara*
HONORABLE RICHARD J. ARCARA
UNITED STATES DISTRICT JUDGE

DATED: March 8, 2013